No. 42,696

The State of Kansas, *Appellee*, v. Cecil Penry, *Appellant*.

(368 P. 2d 60)

Opinion filed January 20, 1962.

*William B. McCormick*, of Topeka, argued the cause and was on the briefs for the appellant.

*Robert M. Brown*, county attorney, argued the cause, and *William Ferguson*, attorney general, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Wertz, J.: This is an appeal from a conviction of the offense of robbery in the first degree (G. S. 1949, 21-527). The undisputed facts, as disclosed by the record, are as follows:

On the night of June 30, 1960, defendant Cecil Penry and his two companions, McPherson and Bond, began a robbery tour in Topeka. The three men drove around the eastern section of town where, prior to the robbery in question, they robbed the occupants of two separate automobiles.

About midnight Bryan Vestal and a Miss DeWitt were parked alongside the road near a television tower west of the city. The defendant and his two accomplices drove up and parked their automobile behind the Vestal car and defendant and one of his companions approached the Vestal car on either side, one armed with a ball bat and the other with a knife with which they threatened both Vestal and Miss DeWitt, and obtained from them sixteen dol-

lars. Shortly thereafter McPherson was apprehended and he admitted being involved in the holdup and implicated the defendant.

Defendant Penry was arrested, and on July 5, after being advised of his rights by Fred S. Jackson, assistant county attorney, made a complete, detailed statement of his activities during the night of June 30 and the morning of July 1. The defendant admitted his participation in the two robberies in the east part of town as well as the robbery in question.

The record further discloses that approximately four months later, on October 25, defendant was found by a court-appointed commission of three physicians to be insane and unable to comprehend his position or make his defense, and was committed to the Larned State Hospital under the provisions of G. S. 1949, 62-1531, where he remained until February 17, 1961, at which time he was pronounced recovered from his disability and was returned to the Shawnee county district court for trial.

At the trial defendant's accomplice, McPherson, testified to the robberies and to defendant's action in the robberies on the night in question.

Mr. Jackson, former assistant county attorney, testified he made the initial investigation of the case and took the statement made by the defendant on July 5; that prior to taking the statement the defendant was advised of Mr. Jackson's official position, that the sheriff was present and also that a certified court reporter was present and would record everything the defendant had to say; and that he advised defendant that he was making no promises in order to obtain the statement. Mr. Jackson further advised the defendant that anything defendant said could be used against him in court, and then asked defendant if he was willing to make a statement under those conditions. Defendant answered in the affirmative.

On cross-examination Mr. Jackson testified that in his opinion defendant was competent to make a statement, that defendant appeared to be a normal person and exhibited normal behavior.

Defendant's statement was admitted in evidence over his counsel's objection on the sole ground of its competency and voluntariness without giving any reason for such objection.

The jury returned a verdict of guilty; and from an order overruling his post-trial motion defendant appeals.

It appears that defendant's sole contention of error is that inasmuch as he was found to be insane approximately four months after

the commission of the offense and the making of his statement admitting the robbery that he overcame the presumption that he was sane and the burden shifted to the prosecution to prove that he was sane at the time of the commission of the offense and the making of the statement.

It is a fundamental principle of law that every person, except a young child, is presumed to possess a sufficient degree of reason to make him responsible and therefore punishable for his criminal acts. In other words, sanity is always presumed until the contrary appears. It is therefore never incumbent upon the prosecution to introduce in evidence any proof of sanity until insanity has been alleged in defense and until some evidence thereto has been introduced by the accused. (1 Burdick Law of Crime, § 204, p. 269; 22A C. J. S., Criminal Law, § 584.) Moreover, the burden of proof is on an accused pleading insanity to prove his legal incapacity to confess the crime. (*Hinson, alias Moon, v. The State*, 152 Ga. 243, 109 S. E. 661; 23 C. J. S., Criminal Law, § 828, p. 229.) It is stated in 2 Wharton's Criminal Evidence, 12th Edition, § 386, that the burden of proof and the existence of a condition which affects the admissibility or the weight of his confession is upon the defendant. The prosecution is not required to prove the absence of a mental or physical condition which, if it existed, would make the confession inadmissible. In a criminal case the state may rest upon the presumption of sanity in establishing a *prima facie* case. It is then incumbent upon the defendant to overcome that presumption by competent evidence and to reasonably substantiate his plea of insanity. Such evidence must reasonably tend to show that at the time of the commission of the crime or at the time of the giving of the statement defendant was incapable of distinguishing right from wrong so as to excuse him from the legal consequences of his acts. (*State v. Roy*, 40 N. M. 397, 60 P. 2d 646, 110 A. L. R. 1; 23 C. J. S., Criminal Law, § 828.) It should be noted that at no time during the trial did defendant or his counsel contend that defendant was insane at the time of the commission of the offense or of the making of the statement.

Confessions freely and voluntarily made are *prima facie* admissible; and the burden of proof is upon the defendant pleading insanity to prove his legal incapacity to commit a crime and, consequently, his legal incapacity to confess a crime. This burden was not carried by the defendant. All that is disclosed by the record to

rebut the presumption of sanity is the fact that four months after the commission of the offense and the making of the statement the defendant was adjudged insane and unable to comprehend his position and make his defense. The testimony of Mr. Jackson was that at the time the statement was made defendant appeared to be a normal person and exhibited normal behavior. In his statement defendant went into minute detail regarding his activities on the night in question and his participation in all three robberies. The best evidence of defendant's competency is his statement. It shows unmistakably that it was made by one in complete possession of his mental faculties, since it discloses facts and details of all three robberies, especially the one in question, which were within his knowledge only and which could not have been suggested to him by the arresting officers or the assistant county attorney.

Because of the reasons above set out there is no ground for the argument that the evidence was sufficient to overcome the presumption of sanity at the time of the commission of the offense or the making of the statement. The judgment of the trial court is affirmed.

It is so ordered.

JACKSON, J., not participating.